

I N T H E

# Court of Appeals of Indiana

Shirley E. Melton, et al.,

*Appellants-Plaintiffs*

v.

Vanderburgh County Commissioners, et al.,

*Appellees-Defendants*



FILED

Jul 29 2026, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

July 29, 2026

Court of Appeals Case No.
25A-MI-2310

Appeal from the Posey Superior Court

The Honorable Travis L. Clowers, Judge

Trial Court Cause No.
65D01-2412-MI-609

---

**Opinion by Judge Altice**
Judges Brown and DeBoer concur.

**Altice, Judge.**

## Case Summary

Shirley E. Melton, Michael Melton, and Jason Melton (collectively, the Meltons) filed suit against Vanderburgh County and the Vanderburgh County Commissioners (collectively, the County) based on the County's placement of a barrier – a guardrail – at the dead end of Bayshore Drive in the Blue Heron Estates Subdivision (the Subdivision). The Meltons alleged that this barrier prevented them from accessing their farmland (the Farmland) and that the plat map of the Subdivision (the Plat) establishes that they have an easement onto Bayshore Drive and throughout the Subdivision. The Meltons filed claims against the County for declaratory judgment, unlawful trespass, and judicial review.

On the County's motion and after hearings on the matter, the trial court dismissed the action concluding that the claims were barred by the statute of limitations and that certain claims were nonjusticiable and the court lacked subject matter jurisdiction. The Meltons appeal arguing that the trial court improperly dismissed each of their claims against the County.

We affirm in part, reverse in part, and remand.

## Facts & Procedural History

In May 2004, Shirley sold a portion of her Vanderburgh County farmland to Blue Heron Development, LLC for the purpose of creating the Subdivision.

The Plat was recorded in Vanderburgh County on August 11, 2006, with Shirley signing as grantor. The Plat expressly indicates that Shirley retained ownership of certain land within the Subdivision, designated as Lots 1, 2, and 81. Regarding access, the Plat provides: "Lots 1 and 2 shall have direct access to Millersburg Road. Lot 81 shall have access to Green River Road. All other lots shall access interior streets only." *Appellants' Appendix Vol. II* at 18; *Exhibits Vol. 3* at 4. Though not depicted or designated on the Plat, after the sale, Shirley also continued to own the Farmland directly to the east of the Subdivision.

[5] The Plat contains certain streets that were to be developed within the Subdivision and dedicated for public use. Below is a portion of the Plat relevant to our review which shows interior streets and their relation to Lots 1, 2, and 81, which are highlighted:



*Appellants' Appendix* at 18 (edited). This image is oriented horizontally from south to north. Millersburg Road runs along the left (south) edge and it intersects with Pelican Pointe Drive at the entrance to the Subdivision. As Pelican Pointe Drive moves north through the Subdivision, it eventually turns into Bayshore Drive, which heads east and then dead ends at the eastern border of the Subdivision with Lots 46 and 47 on either side.

[6] In June 2011, the County accepted the dedication of the Subdivision's interior streets for purposes of maintenance. Notably, the end of Bayshore Drive stopped twenty-four feet short of the Subdivision's property line. Then in 2015, the County installed a traffic barrier/guardrail at the end of Bayshore Drive, as pictured below:



*Exhibits Vol. 3* at 3. Though aware of the installation of this barrier, according to the Meltons, "Shirley opted not to do anything" because "the Meltons at that time had an alternative route available via Millersburg Road to service their crops." *Appellants' Appendix Vol. II* at 76.

[7] In 2019, Shirley deeded the Farmland to her sons, Michael and Jason, as joint tenants with rights of survivorship and retained a life estate for herself. The Meltons continue to own and maintain the Farmland. At some point, however, the route from the Farmland to Millersburg Road became unavailable to the Meltons "due to certain properties being deeded off to individuals" based on the Meltons belief that they could access the Farmland through Bayshore Drive. *Id*.

[8] On October 7, 2024, the Meltons petitioned the County to remove the barrier at Bayshore Drive so they could utilize their purported easement. On November 12, 2024, the County denied this request, which denial the Meltons claim has "effectively landlocked the [Farmland] from access." *Id*. at 94.

[9] On December 9, 2024, the Meltons filed this action against the County, claiming the Plat shows that Shirley "retained an easement right throughout the Subdivision providing access to her remaining farmland immediately to the east via the abutting Bayshore Drive." *Id*. at 13. In the complaint, the Meltons asserted three claims against the County: 1) declaratory judgment regarding existence of an easement; 2) unlawful trespass; and 3) judicial review of the County's executive decision to deny the Meltons' request to remove the barrier. With respect to the trespass claim, in addition to damages, the Meltons asked the trial court to order the County to remove the barrier and to "pave the twenty-four (24) feet at the end of Bayshore Drive" that abuts the Farmland. *Id*. at 15. The Meltons attached the Plat to the complaint.

The Meltons filed the complaint in Vanderburgh County Superior Court but then simultaneously filed a motion for change of venue from county and judge pursuant to Ind. Trial Rule 76. The trial court granted the motion the next day and transferred the case to Posey County without following the procedures then outlined in T.R. 76(D).[1] After several extensions granted by the (new) trial court, on March 10, 2025, the County filed an objection to the change of venue and requested that the matter be returned to Vanderburgh County, noting that Ind. Code § 36-2-2-27(a) provides for appeals of decisions by the county executive to be made "to the circuit court, superior court, or probate court for the county." The trial court denied the County's venue motion after a hearing.[2]

On March 10, the County also filed a motion to dismiss pursuant to Ind. Trial Rule 12, asserting the following grounds:

> (1) Plaintiffs failed to satisfy a condition precedent of serving a Notice of Tort Claim prior to filing the Complaint and within the statutory time frame;
>
> (2) Plaintiffs' Complaint and claims are barred by the applicable statute of limitations;

---

[1] T.R. 76 has since been amended and the revised procedures are now set out in subsection (A)(2) of the rule.

[2] The County does not challenge this venue ruling on appeal, maybe because the Meltons were entitled as a matter of law to transfer of venue out of Vanderburgh County because the County is a party. *See City of Lawrenceburg, Indiana v. Franklin Cnty., Ind.*, 59 N.E.3d 296, 297 (Ind. Ct. App. 2016) ("Regardless of whether Franklin County is a preferred venue, its status as such is trumped by Trial Rule 76(A), which states explicitly that a motion requesting a change of venue 'shall be granted only upon a showing that the county where suit is pending is a party.'").

> (3) Plaintiffs failed to state a claim upon which relief can be granted;
>
> (4) This Court lacks jurisdiction over the subject matter; and
>
> (5) Plaintiffs failed to join indispensable parties and real parties of interest.

*Appellants' Appendix Vol. II* at 42. The County filed a brief in support of its motion to dismiss.

[12] On May 23, 2025, the Meltons filed a motion for leave to amend their complaint. While the substance of the complaint was unchanged, the Meltons noted in the motion that they had served the County with a notice of tort claim on February 13, 2025, and thus "the 90 day requirement has been met."[3] *Appellants' Appendix Vol. II* at 65. On May 23, the Meltons also filed a brief in opposition to the County's motion to dismiss.

[13] In June 2025, following a hearing, the trial court denied the motion to amend the complaint. The court then set the matter for a hearing on the motion to dismiss, which was held on July 16. The trial court took the matter under advisement after the hearing and two days later issued an order summarily granting the motion to dismiss without prejudice.

---

[3] This appears to be a reference to the requirement in the Indiana Tort Claims Act (the ITCA) that a claimant not initiate a suit against a governmental entity unless the person's claim has been denied in whole or in part, with the governmental entity having ninety days to make such a determination before denial is presumed. *See* Ind. Code § 34-13-3-11, -13.

Thereafter, on July 28, 2025, the Meltons filed an amended complaint, again virtually identical to the original complaint. The Meltons, on August 12, filed a motion for clarification and a motion to correct error. In this filing, they explained that the amended complaint was filed as a matter of right pursuant to T.R. 12(b), which permits an amendment within ten days of dismissal for failure to state a claim. As the dismissal was general, the Meltons filed the motion to correct error to address any other bases for dismissal, though they did so only in general terms.

After a response from the County and a hearing, on August 25, 2025, the trial court issued an amended order, clarifying the bases of the dismissal: "The Plaintiffs' claims are barred by the statute of limitations. In addition, certain counts of Plaintiffs' claims are nonjusticiable and the court lacks subject-matter jurisdiction." *Appellants' Appendix Vol. II* at 114. Accordingly, the court dismissed each of the counts, denied the motion to correct error, and dismissed the amended complaint.

The Meltons now appeal the dismissal of their amended complaint. Additional information will be provided below as needed.

## Standard of Review

Under T.R. 12(B)(6), a civil action may be dismissed for "failure to state a claim upon which relief can be granted." A T.R. 12(B)(6) motion "tests the legal sufficiency of the plaintiff's claim, not the facts supporting it." *Residences at Ivy Quad Unit Owners Ass'n v. Ivy Quad Dev., LLC*, 179 N.E.3d 977, 981 (Ind. 2022)

(quotation omitted). To overcome such a motion, the complaint must allege facts that show the "possibility of relief." *Id*. at 980. We review a T.R. 12(B)(6) motion de novo, taking the facts alleged in the complaint as true, considering all allegations in the light most favorable to the nonmoving party, and drawing every reasonable inference in that party's favor. *Id*. at 981; *see also City of Fishers v. Netflix, Inc.*, 264 N.E.3d 69, 77 (Ind. Ct. App. 2025) ("An order to dismiss is affirmed when it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances."), *trans. denied*. Further, in the context of T.R. 12 motions, materials of which a court may take judicial notice do not constitute matters outside the pleadings and thus may be considered. *See Davidson v. State*, 211 N.E.3d 914, 925 (Ind. 2023).

[18] With respect to T.R. 12(B)(1), which addresses dismissal for lack of subject matter jurisdiction, "the relevant question is whether the type of claim presented falls within the general scope of the authority conferred upon the court by constitution or statute." *Marion Cnty. Cir. Ct. v. King*, 150 N.E.3d 666, 671 (Ind. Ct. App. 2020), *trans. denied*. A motion to dismiss on this ground presents a threshold question regarding the court's power to act. *Id*. Where jurisdictional facts are not in dispute or are confined to a paper record, our review is de novo. *See id*.; *IncreMedical, LLC v. Kennedy*, 212 N.E.3d 220, 224-25 (Ind. Ct. App. 2023), *trans. denied*.

[19] Further, it is well established that we may affirm a dismissal if the decision is sustainable on any basis in the record. *Stone v. Wright*, 133 N.E.3d 210, 215

(Ind. Ct. App. 2019). That is, we are not confined to the bases upon which the trial court dismissed the claims.

## Discussion & Decision

### The Tort Claim

We turn first to the tort claim asserted by the Meltons against the County. In their amended complaint, they alleged that the County is "an unlawful trespasser upon the ingress/egress rights owned by the Meltons, specifically that unimproved portion of what exists at the end of the dedicated Bayshore Drive and the eastern property line of [the Subdivision]." *Appellants' Appendix Vol. II* at 70. The Meltons further alleged that "the barrier and concrete pad that [the County] decided to put on that twenty-four (24) foot area … constitute an illegal trespass upon the Meltons' private rights of which [the County] has no right to claim." *Id.*

Aside from exceptions not applicable here, the ITCA bars tort claims against a political subdivision of the State unless a plaintiff has filed notice of the claim with the entity's governing body within 180 days after a loss occurs.[4] I.C. § 34-13-3-8(a). A loss occurs "when the plaintiff knew or, in the exercise of ordinary

---

[4] Pursuant to I.C. § 34-13-3-10: "The notice … must describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice." The notice must also be in writing. I.C. § 34-13-3-12.

diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Stone*, 133 N.E.3d at 217.

[22] Compliance with the notice provisions of the ITCA is a procedural precedent that the plaintiff must prove, and the trial court must determine this prior to trial. *Id.* That is, if a governmental defendant raises noncompliance with the notice provisions as a defense, the plaintiff bears the burden of proving compliance. *Id.* The determination of compliance is a question of law, and the political subdivision is entitled to dismissal if the plaintiff failed to provide notice as required by the ITCA. *See Town of Cicero v. Sethi*, 189 N.E.3d 194, 204 (Ind. Ct. App. 2022), *trans. denied*; *Stone*, 133 N.E.3d at 217.

[23] Here, the Meltons failed to show compliance with the ITCA. It was undisputed below that the County placed the barrier – thus allegedly becoming a trespasser interfering with the easement – in 2015 and that the Meltons did not file a notice of tort claim with the County until many years later. They petitioned the County for removal of the barrier in October 2024 and filed their notice of tort claim in February 2025. The Meltons claim that they were entitled to a fresh 180 days to provide notice once the County denied their request to remove the barrier on November 12, 2024, because before that time they "had not discovered the trespass was permanent." *Appellants' Reply Brief* at 5. The Meltons provide no authority for the proposition that the notice requirement begins to run only upon discovery that the trespass is permanent.

[24] The injury-causing act upon which the tort claim is based is the County's placement of the barrier in the Meltons' alleged easement in 2015, not the refusal to remove it nine years later. Moreover, permanency of the barrier's placement in the alleged easement was, or should have been, apparent in 2015 by its very nature. Shirley simply opted to do nothing about it until 2024. Dismissal of the tort claim was appropriate given the Meltons' clear failure to file their notice of tort claim with the County within 180 days of discovery of the barrier that purportedly blocked access through their easement.

[25] For similar reasons, the tort claim would also fail on statute of limitations grounds. The limitations period applicable to civil trespass claims is six years. *See Stickdorn v. Zook*, 957 N.E.2d 1014, 1022 (Ind. Ct. App. 2011) (citing Ind. Code § 34-11-2-7(3)). "Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury." *Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). The discovery rule does not require a smoking gun for the limitations period to begin; the circumstances must simply be such that a person of common knowledge and experience would be put on notice that some right of theirs has been invaded or that some claim against another party might exist. *See Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.,* 134 N.E.3d 370, 381 (Ind. 2019).

[26] The Meltons acknowledged below that Shirley knew of the barrier's placement in 2015, more than six years before this action was filed. On appeal, though, they briefly assert two alternative arguments: (1) the barrier constituted "an

ongoing tort without a statute of limitations" or (2) "the triggering date should be the date the County refused to move the guardrail." *Appellants' Brief* at 18. In their lead appellate brief, the Meltons cite no authority for these propositions and provide no cogent argument. The arguments are thus waived.[5] *See Davidson*, 211 N.E.3d at 926 ("A litigant who fails to support his arguments with appropriate citations to legal authority and record evidence waives those arguments for our review."); *see also* Ind. Appellate Rule 46(A)(8) (providing that appellant's brief must support each contention with cogent reasoning and citations to authorities, statutes, and the record).

**The Declaratory Judgment Claim**

[27] The Meltons also filed a claim against the County seeking a declaratory judgment that they have an easement to access the public streets in the Subdivision at the point where Bayshore Drive abuts the Farmland. They allege that the Plat expressly establishes such an easement. In the alternative, they argue that an easement should be implied based on "the understanding of the

---

[5] The Meltons belatedly cite *Stickdorn* in their reply brief to argue that the County's refusal to remove the barrier after being requested to do so constituted a "new act, which restart[ed] the statute of limitations." *Appellants' Reply Brief* at 7. While we need not consider arguments raised for the first time in a reply brief, we observe that *Stickdorn* is easily distinguishable from the case at hand. It dealt with an intermittent, non-abated nuisance and trespass caused by the defendant farmer's recurring and improper disposal of animal waste. *Stickdorn*, 957 N.E.2d at 1023, 1024 ("Each time the odors and polluted streams affected the Stickdorns' property, the statute of limitations began anew" as "it was the intermitted, recurring, and continuing spreading of the manure that caused the damages."). In the case at hand, the barrier was installed once and was a permanent condition, not an intermitted or reoccurring trespass.

parties at the time of the sale of the property and the acceptance of the plat" and based on necessity. *Appellants' Appendix* at 69.

[28] The County argues that the complaint failed to state a claim upon which relief can be granted because the Plat establishes as a matter of law that the Meltons do not have an express or implied easement. We address each type of easement in turn.

[29] Express easements are specifically granted in a deed or written contract. *Morehouse v. Dux North LLC*, 226 N.E.3d 758, 763 (Ind. 2024). "[I]n an instrument creating an express easement, the dominant and servient tenement should be described with reasonable certainty." *Larry Mayes Sales, Inc. v. HSI, LLC*, 744 N.E.2d 970, 973 (Ind. Ct. App. 2001) (observing that while the document need not use the terms "dominant estate" and "servient estate," it must adequately describe those estates with reasonable certainty); *see also Lennertz v. Yohn*, 79 N.E.2d 414, 417 (Ind. Ct. App. 1948) ("A reservation of an easement is not operative in favor of land not described in the conveyance.").

[30] The Meltons' claim of an express easement is based solely upon the Plat, but the Plat clearly and unambiguously does not create an express easement in their favor.[6] It makes no reference to the Farmland, to the creation of an easement

---

[6] We note that four easements are expressly set out in the Plat: a drainage easement; a public utility easement; a drainage and underground public utility easement; and a lake maintenance and storm drainage easement. Each of these identify the easement's beneficiary, purpose, the location(s), and restrictions. None of the express easements mention Shirley or the Meltons as holding a dominant tenement.

for the benefit of the Farmland, or to the dominant and servient tenements. As a matter of law, the Meltons cannot claim an express easement based on the Plat.

[31] The Meltons also generally claim that an easement may be shown by considering the understanding of the parties at the time of the sale. For example, they note that they intend to call as witnesses the engineers and surveyors who designed and drew the Plat and that these witnesses would testify that the easement in question was "intended … from the get-go[.]" *Transcript Vol. 2* at 33. The Meltons do not cite authority for their proposition that such evidence can be used to refute an unambiguous document. *Cf. Oakes*, 631 N.E.2d at 952 ("We refuse Big Ten's invitation to look beyond the deeds because the terms are plain and unambiguous; no dominant tenements are identified.").

[32] Of course, an easement may be implied by necessity, a basis upon which the Meltons allege in their amended complaint.[7]

> To establish an easement of necessity, the owner of the dominant estate must prove that (1) the servient and dominant properties had a common owner (unity of ownership); (2) the unity of ownership was severed when the common owner conveyed one of the parcels (severance); (3) **this severance made an easement**

---

[7] Easements may also be established by prior use, but there is no allegation by the Meltons that they used the purported easement prior to the sale. *See id.* at 765 (setting out the requirements for an implied easement based on prior use, including among other things that the easement was "permanent and obvious" and continued to be used after severance). To be sure, Bayshore Drive did not even come into existence until the subdivision was developed pursuant to the Plat.

**necessary for the owner of the dominant estate to access a public road (necessity at severance)**; and (4) the easement's necessity remained after severance (continuing necessity).

*Morehouse*, 226 N.E.3d at 766 (emphasis added).

[33] The rub here for the Meltons is that they can only establish an easement by necessity if at the time of severance – when Shirley sold the subdivided land to the developer – the Farmland was "legally landlocked with no public road abutting contiguous property." *Id*. at 768. In practical effect, this would require that the Meltons, at that time, could not access the Farmland from Millersburg Road through Lot 2 (or Lots 1 and 2). The Plat plainly shows otherwise, and it is of no moment that subsequent transfers of property by the Meltons have caused the Farmland to become landlocked. The law is clear that necessity can never be shown when a public road abuts the property directly or through contiguous parcels at the time of severance. *See id*. at 767-70. The Meltons' access to the Farmland through Lot 2, as reflected in the Plat, prevented the establishment of an easement by necessity as a matter of law. Accordingly, we affirm the dismissal of the declaratory judgment claim, as the Meltons failed to state a claim on which relief could be granted.

**The Judicial Review Claim**

[34] The Meltons' final claim asked the trial court to review the November 2024 decision by the Vanderburgh County Commissioners (the Commissioners) denying their request to remove the barrier. They allege that they were aggrieved by this decision and that the decision was arbitrary and capricious.

I.C. § 36-2-2-27(a) provides: "A party to a proceeding before the executive who is aggrieved by a decision of the executive may appeal that decision to the circuit court, superior court, or probate court for the county." It has long been recognized that only judicial or quasi-judicial decisions, and not legislative, administrative, or ministerial ones, are subject to judicial review under this statute. *Fayette Cnty. Bd. of Comm'rs v. Price*, 9 N.E.3d 640, 641 (Ind. 2014).

Our Supreme Court has adopted a four-factor test in determining whether an action is judicial in nature:

> While it is difficult, if not impossible, to define quasi-judicial power and to discriminate between judicial and administrative acts in a way which will be applicable to every case, we find that it is the nature, quality, and purpose of the act performed, rather than the name or character of the officer or board which performs it, which determines its character as judicial. Generally, the judicial function consists of: (1) the presence of the parties upon notice; (2) the ascertainment of facts; (3) the determination of the issues; and (4) the rendition of a judgment or final order regarding the parties' rights, duties, or liabilities.

*Id*. at 641-42 (quoting *Lincoln v. Bd. of Comm'rs of Tippecanoe Cnty.*, 510 N.E.2d 716 (Ind. Ct. App. 1987), *abrogated in part on other grounds by McDillon v. N. Ind. Pub. Serv. Co.*, 841 N.E.2d 1148 (Ind. 2006)).

"As a general proposition, the party challenging subject matter jurisdiction carries the burden of establishing that jurisdiction does not exist." *GKN Co. v. Magness*, 744 N.E.2d 397, 404 (Ind. 2001). The party is relieved of this burden "only if a lack of jurisdiction was apparent upon the face of the complaint."

*Methodist Hosp. of Ind., Inc. v. Ray*, 551 N.E.2d 463, 467 (Ind. Ct. App. 1990),
*adopted by* 558 N.E.2d 829 (Ind. 1990).

[38] Here, we cannot say that lack of jurisdiction is apparent on the face of the amended complaint. The amended complaint refers generally to a petition made by the Meltons to the Commissioners to remove the barrier and a denial about a month later. As the County notes, the amended complaint did not include any records, minutes, or other documents related to the decision by the Commissioners. And the County did not fill these gaps in the record for the trial court or this court to make an informed judgment regarding jurisdiction based on the four factors listed above. We do not know the process the Commissioners used in determining whether to grant or deny the Meltons' request (for example, was notice given, were there opposing parties, and was evidence presented) or the reasons for the ultimate denial.

[39] On a T.R. 12(B)(1) motion, where the pleadings are construed in favor of the Meltons and the record is otherwise silent regarding the Commissioners' decision making process, we hold that dismissal for lack of subject matter jurisdiction is not proper. On further development of the record, however, the County may be able to establish that dismissal of the judicial review claim is appropriate. *Cf. Great Lakes Transfer, LLC v. Porter Cnty. Highway Dep't*, 952 N.E.2d 235, 243 (Ind. Ct. App. 2011) (affirming grant of summary judgment based on lack of subject matter jurisdiction where undisputed facts and developed record allowed consideration of the four factors).

[40] Additionally, the amended complaint appears to assert a constitutional, nonstatutory basis for judicial review – the alleged arbitrary and capricious nature of the decision by the Commissioners.

> We note that Indiana has recognized a constitutional right to judicial review of administrative actions. Petitioners correctly point out that they are entitled to review of governmental action which was arbitrary, capricious, and/or violative of their constitutional rights. Such action presents a "judicial question" regardless of the nature of the Board's action.

*Vranicar v. Bd. of Comm'rs of Brown Cnty.*, 730 N.E.2d 752, 756 (Ind. Ct. App. 2000) (citations omitted); *see also A.B. v. State*, 949 N.E.2d 1204, 1217 (Ind. 2011) ("[A]n arbitrary or capricious decision by an administrative body would call for judicial action, even if there is no statute authorizing an appeal."). Again, on the bare record here, dismissal of the judicial review claim would be premature.

## Conclusion

[41] We affirm the dismissal of the tort claim and the declaratory judgment claim. The former is barred due to the Meltons' failure to comply with the notice requirements of the ITCA, and the latter fails to state a claim upon which relief can be granted because the unambiguous Plat does not establish an express easement and it shows that there was no easement by necessity at the time of severance. The claim for judicial review, however, does survive at this stage due to the County's failure to supplement the record and establish a lack of

jurisdiction. The cause is remanded for further proceedings on the judicial review claim only.[8]

[42] Judgment affirmed in part, reversed in part, and remanded.

Brown, J. and DeBoer, J., concur.

ATTORNEYS FOR APPELLANTS

Yvette M. LaPlante
Evansville, Indiana

Terry A. White
Evansville, Indiana

ATTORNEYS FOR APPELLEES

Jeffrey W. Ahlers
Craig R. Emig
Evansville, Indiana

---

[8] In their reply brief, the Meltons suggest that on remand they should have a right to amend their complaint. But they already amended their complaint as a matter of right after the initial dismissal order. *See* T.R. 12(B) (providing for one amendment as of right within ten days when a motion to dismiss is sustained for failure to state a claim under (B)(6)). Moreover, after the dismissal of the amended complaint, the Meltons chose to appeal rather than to seek another amendment, thus making the dismissal a final judgment on the merits. *See DeCola v. Steinhilber*, 207 N.E.3d 440, 447 (Ind. Ct. App. 2023) (observing that upon a 12(B)(6) dismissal, "a plaintiff has two options: (1) determine that the claims only currently lack merit because of the way in which they are pleaded … and correct the pleadings; or (2) reject the trial court's ruling and its implication and challenge the ruling on appeal").

.